IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRADLEY WESTON TAGGART**,

    Appellant,

v.

**STUART M. BROWN, et al.**,

    Appellees.

No. 3:12-cv-00236-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Appellant, Bradley Taggart, appeals a United States Bankruptcy Court decision denying his motion for contempt against appellees, Terry Emmert, Keith Jehnke, Stuart Brown, and Sherwood Park Business Center LLC ("SPBC"), in which he alleges that appellees violated his 11 U.S.C. § 524 ("§ 524") discharge injunction. For the following reasons, I reverse and remand this case to the bankruptcy court.

## BACKGROUND

    This dispute stems from a Washington County Circuit Court lawsuit revolving around uncertain ownership interests in SPBC. Mr. Taggart transferred his 25% stake in SPBC to BT of Sherwood LLC ("BT"), an LLC that he formed, and then subsequently sold his interest in BT to his attorney in this appeal, John Berman. SPBC sued Mr. Taggart, Mr. Berman, and BT over the purported conveyance, alleging that Mr. Taggart maintained the 25% interest in SPBC because

1 – OPINION AND ORDER

he failed to provide notice or proof of transfer. Plaintiff countersued appellees SPBC, Mr. Jehnke, and Mr. Emmert for attorney fees pursuant to Section 13.6 of the SPBC Operating Agreement and Or. Rev. Stat. § 20.105. (Appellant's Brief [87-5] 3). The state court case was stayed when Mr. Taggart filed for Chapter 7 bankruptcy. As part of his discharge, which was granted on February 23, 2010, the bankruptcy trustee discharged the counterclaim for attorney fees back to Mr. Taggart. When the state court case reconvened, Mr. Berman filed a motion to dismiss Mr. Taggart from the case. The judge denied the motion, finding that Mr. Taggart was a non-dispensable party, but ruled that no money judgment would be entered against him. (*Id*. [87-6] 23). After a trial, the court ruled that Mr. Taggart still owned a 25% interest in SBPC and that Mr. Emmert and Mr. Jehnke were entitled to purchase Mr. Taggart's interest in accordance with the terms of the SPBC Operating Agreement. (*Id*. at 31). The judge also dismissed Mr. Taggart's counterclaims with prejudice. (*Id*. at 32).

All appellees subsequently sought attorney fees from Mr. Taggart, and SPBC alone was awarded approximately $45,000. The state court judge, citing *In re Ybarra*, 424 F.3d 1018, 1021 (9th Cir. 2005), reasoned that attorney fees could be assessed against Mr. Taggart despite his bankruptcy discharge, because he never abandoned his counterclaim for attorney fees and because he continued to seek dismissal from the lawsuit post-petition, which if successful, would have given him a contractual right to attorney fees. Thereafter, Mr. Taggart re-opened his bankruptcy case and filed a Motion to Hold Stuart M. Brown, Terry W. Emmert and Keith Jehnke in Contempt for Violating Discharge Injunction Under 11 U.S.C. § 524. (*See* Appellant's Brief [87-2] 1). In denying the contempt motion, the bankruptcy court reiterated that the § 524 discharge injunction was inapplicable because Mr. Taggart reentered the fray of the state court lawsuit.

**STANDARD OF REVIEW**

A bankruptcy court's "conclusions of law [are reviewed] de novo and its factual findings for clear error." *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002). The Ninth Circuit applies "de novo review to 'mixed questions' of law and fact," because such cases "require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles." *In re Beverly*, 374 B.R. 221, 230 (B.A.P. 9th Cir. 2007); *see also In re Brawders*, 503 F.3d 856, 866 (9th Cir. 2007). This case involves largely undisputed facts and a mixed question of law and fact, and therefore, I review de novo the Bankruptcy Court's decision.

**DISCUSSION**

"A Chapter 7 bankruptcy discharge releases the debtor from personal liability" for pre-bankruptcy debts. *In re Ybarra*, 424 F.3d at 1022. A Chapter 7 bankruptcy discharge also "operates as an injunction against the commencement or continuation of an action, [or] the employment of…an act, to…offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Mr. Taggart alleges that appellees violated his § 524 injunction by seeking attorney fees in connection with their continuation of the aforementioned pre-petition state court lawsuit. A debtor alleging a violation of § 524 must bring a motion for contempt under 11 U.S.C. § 105(a) ("§ 105(a)") of the bankruptcy code. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509–10 (9th Cir. 2002).

A party must "knowingly" violate the discharge injunction in order to be held in contempt under § 105(a). *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006) (citing *Walls*, 276 F.3d at 507). In order to demonstrate a knowing violation, Mr. Taggart must prove by clear and convincing evidence that appellees: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *Id.*

3 – OPINION AND ORDER

The threshold issue, however, is whether appellees' request for attorney fees in connection with the pre-petition state court lawsuit that was recommenced subsequent to Mr. Taggart's discharge implicates the § 524 injunction. If the claim for attorney fees was not discharged, there inevitably can be no knowing violation of the injunction. The Ninth Circuit holds that "claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily 'return[s] to the fray.'" *In re Ybarra*, 424 F.3d at 1026 (quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533–34 (9th Cir. 1998)). "Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses." *Id*. Since *Ybarra*, the Ninth Circuit has not had occasion to expound on the requisite level of affirmative and voluntary action necessary to constitute returning to the fray.

In *Ybarra*, the debtor filed a state court employment discrimination lawsuit against her former employer, and then three years later filed for Chapter 11 bankruptcy. *Id*. at 1020. She did not list the lawsuit on her bankruptcy schedule. *Id*. The employer subsequently learned of the bankruptcy proceedings and moved to convert the case to Chapter 7, which the bankruptcy court did, leading to the debtor's bankruptcy estate trustee settling the case with the former employer for $17,500. *Id*. The bankruptcy court approved the settlement over the debtor's objections and the state court dismissed the lawsuit. *Id*. The debtor petitioned the bankruptcy court to exempt the state suit, which led to an appeal to the Ninth Circuit, and ultimately a remand back to the bankruptcy court, with the latter court holding that the case was exempt and that the debtor could either accept the settlement offer or take ownership of the lawsuit. *Id*. Opting for the latter, the

debtor persuaded the state court to set aside the dismissal but ultimately lost at summary judgment. *Id*. The former employer then moved for an award of attorney fees and costs and was awarded $456,884.03. *Id*. at 1021. The Ninth Circuit affirmed the bankruptcy court's decision allowing the former employer to collect approximately $150,000 in attorney fees that were incurred after the filing of the debtor's bankruptcy petition. *Id*. at 1027. The Court elaborated that the debtor's actions in reviving the state court action were "sufficiently voluntary and affirmative to be considered 'returning to the fray.'" *Id*.

The parties both cite *In re Kozak*, 03-20278-MT, 2007 Bankr. LEXIS 4548 (Bankr. C.D. Cal. Sept. 10, 2007), an unpublished case from the United States Bankruptcy Court for the Central District of California. In *Kozak*, the debtors entered into a settlement agreement with Packing Crate Classics, Inc. ("PCC") regarding a dispute over a residential property ("the property"). *Id*. at *3. The debtors were leasing the property from PCC at the time of settlement, and it was subsequently the subject of two lawsuits. *Id*. First, the debtors sued PCC alleging that it breached the settlement agreement by not allowing them to purchase the property. *Id*. The state court ruled for PCC and the debtors appealed. *Id*. The second lawsuit arose while the appeal was pending when a third party sued both PCC and the debtors over the property; the debtors filed a cross-complaint against PCC, which essentially alleged the same claims as the first lawsuit. *Id*. In the meantime, the debtors filed for bankruptcy and were granted a discharge. *Id*. at *4. The debtors' Chapter 7 trustee filed an application to employ outside legal counsel, employed on behalf of the estate, for the purpose of pursuing both lawsuits for the debtors. The state court of appeals rejected the appeal in the first lawsuit and PCC filed a motion for attorney fees. *Id*. at *4–5. Because the ruling in the first lawsuit essentially covered the same claims that the debtors brought in the second lawsuit, PCC requested that the trustee's attorney drop the counter-

complaint. *Id*. at *5. The trustee's attorney then filed a motion to be dismissed as debtors' counsel, which was granted. *Id*. at *7. Thereafter, the state court granted PCC summary judgment on the debtors' counter-complaint in the second lawsuit, and PCC filed a second motion for attorney fees. *Id*. at *8. Debtors, now pro se, filed an appeal of the summary judgment ruling, as well as an objection to PCC's proposed order awarding attorney fees. *Id*. at *9.

The *Kozak* court held that PCC was entitled to fees from the second lawsuit only, finding: (1) the debtors did not return to the fray in the first lawsuit because the trustee pursued the litigation; and (2) the debtors' failure to seek dismissal of the cross-complaint in the second lawsuit constituted returning to the fray, because the debtor's failure to respond to PCC's request to dismiss their counter-complaint forced PCC "to take action in response to the pending [cross-complaint] or possibly face judgment themselves," and because the debtors' actions "demonstrated more than a passive lack of response." *Id*. at *20; *20–21. The court noted that the following post-discharge actions on behalf of the debtors gave PCC "every indication that they were pursuing their cross-complaint": they appeared at the summary judgment hearing and indicated to court they were still pursuing their complaint, they attended numerous status conferences, they filed an opposition on the merits to the summary judgment motion in which they argued their cross-complaint should not be dismissed, and they requested an extension of time to exchange expert witness information. *Id*. at 21.

This case is unlike *Ybarra* in the sense that Mr. Taggart did not commence the litigation at issue here, nor can the state court case be considered the commencement of a new suit. He did bring a counterclaim for attorney fees prepetition, which was eventually discharged back to him upon resolution of his Chapter 7 case, and which he never affirmatively moved to dismiss post-petition. Mr. Taggart's remaining involvement in the lawsuit post-discharge is described as

6 – OPINION AND ORDER

follows. Prior to trial, Mr. Berman filed a motion for a protective order on behalf of Mr. Taggart in which he requested that a subpoena for Mr. Taggart's second deposition be quashed, as well as for attorney fees in connection with the motion. (Appellant's Brief [87-5] 35–37).  Mr. Berman also filed a pretrial motion to dismiss in which he sought to dismiss the claims against Mr. Taggart pursuant to his Chapter 7 discharge. (*Id*. [87-6] 14–15). Mr. Berman renewed the motion orally at the close of evidence. After the trial, and after appellees in this case submitted a proposed form of judgment that included their request for attorney fees from Mr. Taggart, Mr. Berman filed an objection on behalf of himself and BT, in which he also argued that no attorney fees or costs, pre or post-bankruptcy, could be assessed against Mr. Taggart pursuant to *In re Ybarra*. (*Id*. [87-10] 41). Mr. Taggart testified at the bankruptcy court oral argument that Mr. Berman prepared the motion for him in part. At the hearing with regard to Mr. Berman's objection, Mr. Taggart, who the state court had previously ruled maintained a 25% interest in SPBS, appeared on his own behalf and argued in entirety that plaintiffs should have to pay interest on the purchase price of his interest in SPBC for the three years that had passed and that any proceeds from the subsequent transaction should go into an escrow account. (*Id*. [87-11] 49). Following the state court judgment, Mr. Taggart personally filed "Objections to Attorney Fees and Costs," (*Id*. [87-9] 14), and a Notice of Appeal (*Id*. [87-12] 10). In the former, he argued that any claim for fees or costs violated his Chapter 7 discharge.

      The issue here is whether Mr. Taggart's aforementioned post-discharge actions were sufficiently affirmative and voluntary to constitute returning to the fray of appellees' state court lawsuit. *In re Ybarra*, 424 F.3d at 1026. I first note that Mr. Taggart's objection to a second deposition does not suggest that he voluntarily or affirmatively agreed to return to the fray. Mr. Taggart reacted to what he viewed as an oppressive litigation strategy as opposed to

affirmatively committing an act that forced appellees to incur post-petition legal fees. Nor do Mr. Taggart's actions after the state court dismissed Mr. Taggart's counterclaims constitute returning to the fray. Mr. Taggart did not object to or seek reversal of the state court's decision on the merits. He solely argued that he should not be subjected to attorney fees for the same reason that he asked to be dismissed from the suit at the outset. A consequence of finding that Mr. Taggart's bankruptcy injunction blocked appellees' attorney fee request would not have been reversal of the state court's dismissal of plaintiff's counterclaims. Therefore, on these facts, Mr. Taggart's actions were reactionary and solely in response to a potential judgment against him for attorney fees, as opposed to affirmative and voluntary actions for the purpose of seeking attorney fees himself.

There is still the matter of whether Mr. Taggart, in seeking to be dismissed from the lawsuit pursuant to the § 524 discharge injunction, and in failing to dismiss his counterclaim for attorney fees, voluntarily took affirmative post-petition action to litigate his prepetition counterclaim for attorney fees under Or. Rev. Stat. § 20.105 and Section 13.6 of the SPBC Operating Agreement. In order to prevail on either of these claims, Mr. Taggart would have had to have been adjudicated the "prevailing party" by the state court judge.[1] Because Mr. Taggart did not move to dismiss the claims against him on the merits and did not otherwise appear or defend in the trial after he was ordered to remain a party, it is unclear whether Oregon law[2]

---

[1] In order to obtain attorney fees under Or. Rev. Stat. § 20.105, Mr. Taggart would have had to have proven that: (1) he "was the prevailing party"; (2) "the opposing party's claim was meritless"; and (3) "the meritless claim was advanced for an improper purpose." *Scott v. Harold Barclay Logging Co., Inc.*, 987 P.2d 17, 18 (Or. Ct. App. 1999) (citing *Mattiza v. Foster*, 803 P.2d 723, 729 (Or. 1990)). Section 13.6 of the SPBC Operating Agreement states in relevant part that "the prevailing party shall be entitled to recovery, in addition to other costs, reasonable attorney fees in connection with [any suit…to enforce or interpret any provision of this Agreement.]" (Appellant's Brief [87-4] 35).

[2] Section 13.6 of the SPBC Operating Agreement states that "the court" shall decide "the prevailing party and the amount of reasonable attorney fees." (Appellant's Brief [87-4] 35). Section 13.1 states that the Agreement "shall be governed by and interpreted in accordance with the laws of the State of Oregon. (*Id.*). Therefore, the analysis as to

8 – OPINION AND ORDER

would permit this designation on these facts. If he could not have prevailed on his counterclaim by seeking dismissal from the suit in the fashion he did, it cannot be said that Mr. Taggart took affirmative post-petition action to recommence his pursuit of attorney fees. Neither the SPBC Operating Agreement nor Or. Rev. Stat. § 20.105 defines "prevailing party." *See Mantia v. Hanson*, 77 P.3d 1143, 1148 (Or. Ct. App. 2003) (explaining that Or. Rev. Stat. § 20.105 "includes no definition of 'prevailing party'"); (Appellant's Brief [87-4] 19–37). The issue is irrelevant as to Or. Rev. Stat. § 20.105, as it would have been impossible for Mr. Taggart, who did not defend on the merits in the lawsuit, to then prove that appellees' claims themselves were meritless, and that they were advanced for an improper purpose. With regard to the SPBC Operating Agreement, Or. Rev. Stat. § 20.077, which governs attorney fees in civil proceedings, states that "the prevailing party is the party who receives a favorable judgment…on the claim." Mr. Taggart's judgment of dismissal pursuant to the § 524 discharge injunction would not have been a favorable judgment on the claims, and therefore, he would not have been entitled to attorney fees under the SPBC Operating Agreement either.

      Regardless, however, Mr. Taggart's actions do not suggest that his requests for dismissal under the § 524 injunction were for the purpose of continuing his counterclaim for attorney fees, but rather to extricate himself from the lawsuit altogether. Unlike in *Kozak*, the fact that Mr. Taggart failed to affirmatively dismiss his counterclaim does not change the conclusion either, because the appellees here never requested that Mr. Taggart dismiss his counterclaim after arguing that he should remain in the case, nor did Mr. Taggart's failure to seek dismissal of the counterclaim cause appellees to take action themselves lest they face judgment. Lastly, Mr. Taggart's actions in requesting to be dismissed pursuant to his bankruptcy injunction, opposing

---

whether Mr. Taggart would have been a "prevailing party" if he was dismissed pursuant to the bankruptcy injunction would have been conducted by the Washington County Circuit Court judge pursuant to Oregon law.

9 – OPINION AND ORDER

the second deposition, and failing to dismiss his counterclaim should not have indicated to the appellees that he affirmatively intended to seek attorney fees.

For all of these reasons, Mr. Taggart's actions were not sufficiently affirmative and voluntary to be considered returning to the fray. The bankruptcy court's decision on this issue is reversed and this case should be remanded for consideration of whether Mr. Taggart has proven whether appellees knowingly violated the discharge injunction in seeking attorney fees.

## CONCLUSION

The Bankruptcy Court's decision is REVERSED AND REMANDED for further proceedings consistent with my ruling.

IT IS SO ORDERED.

DATED this   6th   day of August, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

10 – OPINION AND ORDER